UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
CITY OF ANN ARBOR EMPLOYEES'
RETIREMENT SYSTEM, Individually and
on behalf of all others similarly situated,

        MEMORANDUM AND ORDER

        Plaintiffs,        CV 08-1418

        -against-        (Wexler, J.)

CITIGROUP MORTGAGE LOAN
TRUST INC., et al.,

        Defendants.
-----------------------------------------------------------X
APPEARANCES:

    COUGHLIN STOIA GELLER RUDMAN ROBBINS LLP
    BY: DAVID A. ROSENFELD, ESQ.
    Attorneys for Plaintiffs
    58 South Service Road, Suite 200
    Melville, New York 11747

    CLEARLY GOTTLEIB STEEN & HAMILTON LLP
    BY: LAWRENCE FRIEDMAN, ESQ.
    Attorneys for Defendants
    One Liberty Plaza
    New York, New York 10006

WEXLER, District Judge

    This is a class action alleging violation of Sections 11 and 15 of the Securities Act of 1933. The action was commenced in the Supreme Court of the State of New York and was thereafter removed to this court. Presently before the court is Plaintiffs' motion to remand. For the reasons that follow, the motion is denied.

1

## BACKGROUND

I. <u>The Parties</u>

Plaintiff is the City of Ann Arbor Employees' Retirement System (Ann Arbor). Ann Arbor brings this action on its own behalf, as well as on behalf of a class of individual investors, as described below (the "Plaintiff Class").

Named as a defendant is Citigroup Mortgage Loan Trust, Inc., ("Citigroup Mortgage") a Delaware corporation formed for the purpose of acquiring, owning and transferring mortgage loan assets and selling interests in them. Also named as defendants are a group of related mortgage loan trusts (the "Trusts"), established by Citigroup Mortgage. The Trusts are common law trusts that are alleged to have issued hundreds of millions of dollars worth of "Mortgage pass-through Certificates and Asset Backed Pass-Through Certificates of Citigroup Mortgage Loan Trust (the "Certificates"). Additionally named as defendants are certain individuals who are alleged to have signed documents relating to investment in the Certificates (collectively the "Individual Defendants"). The Plaintiff Class consists of individuals and entities that acquired the Certificates and are alleged to have suffered financial losses as a result of the acts set forth in the complaint.

II. <u>The Alleged Securities Act Violations</u>

Broadly and briefly stated, Plaintiff alleges purchase of the Certificates in reliance on false registration and related statements (the "Registration Statements"), filed between January and October of 2007, with the Securities and Exchange Commission. Such statements are alleged to have misrepresented, and more specifically, under represented, the risk profile of the investment described.

2

A.  **Factual Allegations Underlying the Complaint**

The false statements relate to the fact that the Certificates are supported by pools of mortgage loans, consisting primarily of loans secured by liens on residential properties. According to Plaintiff, the Registration Statements contained false statements about the underwriting standards used in connection with the mortgages, including statements regarding: (1) the origination of the underlying mortgage loans; (2) the maximum loan value to ratio used to qualify home buyers; (3) the appraisals of properties underlying the mortgage loans and, (4) the debt to income ratios permitted in the granting of the loans.

The complaint alleges that the mortgages underlying the Certificates were issued by, among other entities, American Home Mortgage Corp. ("AHM"). Plaintiffs state, inter alia, that representations were made regarding the "underwriting philosophy" of AHM, including a statement that AHM made loans in compliance with state and federal laws and regulations. This statement is alleged to have been false, along with other statements regarding AHM's evaluation of borrowers' income, and the company's lending practices. On August 6, 2007, AHM filed a voluntary petition for reorganization pursuant to Chapter 11 of the United States Bankruptcy Code. That petition was filed in the United States Bankruptcy Court for the District of Delaware.

In addition to AHM, the complaint alleges the making of false statements in connection with loans made by other mortgage lenders including Countrywide Home Loans, Inc., Argent Mortgage Company, LLC (now a division of Citigroup), Opteum Financial Services, LLC and Wells Fargo Bank, N.A.

Plaintiffs' complaint alleges that by the Fall of 2007, the truth about the performance of mortgage loans underlying the Certificates began to be revealed to the public. This increased the

3

risk of the Certificates receiving less absolute cash flow in the future, as well as the likelihood that investors would not receive a timely return on their investment. At the same time, credit agencies began to downgrade and put negative watch labels on the Certificate classes. The Certificates are allegedly no longer marketable at any price near the prices paid by Plaintiff. In sum, it is alleged that Plaintiff is now exposed to much more risk with respect to the investment in the Certificates than the risk represented in the Registration Statements.

B. Securities Laws Allegedly Violated

The federal securities laws alleged to have been violated are Sections 11 and 15 of the Securities Act of 1933 (the "1933 Act"). 15 U.S.C. §§77k and 77o. Plaintiff's first cause of action is asserted pursuant to Section 11 of the 1933 Act, 15 U.S.C. § 77k ("Section 11"). The Section 11 Defendants against all Defendants except for Citigroup Mortgage. The Section 11 claim asserts that the Registration Statements were false. The defendants named in the Section 11 claim are alleged to have failed to make a reasonable investigation, or to have possessed reasonable grounds for the statements made, in the Registration Statements. Plaintiff is alleged to have acquired the Certificates pursuant to these false statements. As a result, Plaintiff is alleged to have sustained damages as the value of the Certificates declined.

Plaintiff's second cause of action, alleged pursuant to Section 15 of the 1933 Act, 15 U.S.C. § 77o, is asserted against the Individual Defendants and Citigroup Mortgage. The Individual Defendants are alleged to have been "control persons" of Citigroup Mortgage and the Trusts, by virtue of their positions as directors and/or senior officers of Citigroup Mortgage. Liability against the Individual Defendants is alleged on the ground that they signed and, along with Citigroup Mortgage, were responsible for the preparation of the contents of the false

4

Registration Statements.

III. The Motion

As noted, this case was commenced in New York State Court and removed to this court. The present motion seeks remand on the ground that Section 22(a) of the 1933 Act specifically prohibits removal of 1933 Act cases filed in state court. See 15 U.S.C. §77(v)(a). Defendants argue two grounds in support of removal. First, it is argued that this case is "related to" the pending AHM bankruptcy and is therefore removable pursuant to 28 U.S.C. §1452(a). To the extent that there is jurisdiction under the Bankruptcy Code, it is clear that such jurisdiction trumps the non-removal provision of the 1933 Act. See California Public Employees Retirement Sys. v. Worldcom, Inc., 388 F.3d 86, 108 (2d Cir. 2004). Defendants also argue that the case has been properly removed pursuant to the Class Action Fairness Act of 2005 ("CAFA"), which provides for removal to federal court of certain class actions where the matter in controversy exceeds the sum or value of $5 million. See 28 U.S.C. §1332(d). Plaintiffs argue that this case is neither related to the AHM bankruptcy, nor within the CAFA grant of jurisdiction.

The burden of proving federal jurisdiction is on the party seeking removal. See Linardos v. Fortuna, 157 F.3d 945, 947 (2d Cir. 1998). With this burden in mind, and after outlining relevant legal principles, the court will turn to the merits of the motion.

DISCUSSION

I. "Related To" Bankruptcy Jurisdiction

28 U.S.C. § 1452(a) provides for removal of cases over which the court would have jurisdiction pursuant to 28 U.S.C. §1334. The latter section provides for federal jurisdiction of cases arising under, in, or "related to" to a case under Title 11 of the Bankruptcy Code. Federal

jurisdiction is asserted here pursuant to the final clause of Section 1334(b), i.e., as a case "related to" the AHM bankruptcy proceeding.

The scope of "related to" bankruptcy jurisdiction has been broadly interpreted by the Second Circuit. Such jurisdiction exists where the outcome of the removed litigation could "conceivably have any effect on" the bankrupt estate. In re Cuyahoga Equip. Corp., 980 F.2d 110, 114 (2d Cir. 1992), citing, In re Pacor, Inc., 743 F.2d 984, 994 (3d Cir. 1984). This broad interpretation is in accord with the instruction of the Supreme Court which has held that "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate." Celotex Corp. v. Edwards, 514 U.S. 300, 308 (1995), quoting, Pacor, 743 F.2d at 944.

Importantly, it is has been held that the proceeding alleged to be related to the bankruptcy proceeding need not name the debtor as a party. See, e.g., Gem Commercial Assocs., Inc. v. The TJX Cos., Inc., 2003 WL 488304 *2 (D. Conn. 2003); In re Global Crossings, Ltd. Secs. Litig., 2003 WL 21659301 *1 (S.D.N.Y. 2003); In re Worldcom, Inc. Securities Litigation, 293 B.R. 308, 317 (S.D.N.Y. 2003) (hereinafter "Worldcom"); In re River Center Holdings, LLC v. Korff, 288 B.R. 59, 65 (Bankr. S.D.N.Y. 2003). Instead, the issue is whether the outcome of the proceeding "could alter the rights, liabilities, options, or freedom of action (whether positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." Celotex, 514 U.S. at 308 n.6, citing, Pacor, 743 F.2d at 994.

An impact on the debtor estate sufficient to invoke federal jurisdiction has been found where the defendant in the allegedly related action has a contractual claim for indemnification against the debtor. While such a claim does not arise unless the defendant invoking bankruptcy

6

jurisdiction is held liable, it has nonetheless been held to have the required "conceivable" effect on the debtor estate. E.g., River Center Holdings, 288 B.R. at 63-65; Tow v. Credit Suisse First Boston Corp., 2004 WL 1660576 *2 (D. Conn. 2004); Gem Commercial, 2003 WL 21488304 at *2. Even in the absence of a contractual provision for indemnification, federal jurisdiction has been found. In such cases, jurisdiction has been held to exist where there is a "reasonable" legal basis for the claim of indemnification. Worldcom, 293 B.R. at 318; see also Tow, 2004 WL 1660576 *2; Global Crossing, 2003 WL 21659360 *1; Masterwear Corp. v. Rubin Baum Levin Constant & Friedman, 241 B.R. 511, 516 (Bankr. S.D.N.Y. 1999). Courts of Appeal in other circuits have also adopted the conceivable effect test, finding bankruptcy jurisdiction where a claim for indemnification could effect the debtor estate. See, e.g., In re El Paso Refinery, LP, 302 F.3d 343, 348-49 (5th Cir. 2002) (citing "chain of indemnification provisions . . . leading directly to the debtor"); In re Wolverine Radio Corp., 930 F.2d 1132, 1143 (6th Cir. 1991) (contractual claim for indemnification).

This broad interpretation of the "conceivable effect" standard has not been uniformly accepted. Ironically, the Third Circuit Court of Appeals, the court that first articulated the standard in Pacor, has adopted a more narrow interpretation of its own words. In Pacor, the court held that a case commenced against an asbestos distributor was not related to the bankruptcy proceeding involving the asbestos manufacturer. The court held that the absence of a specific indemnification agreement by the debtor made the lawsuit against the distributor a "mere precursor" to a claim for indemnification and thus, too remote to support jurisdiction. Pacor, 743 F.2d at 995. See In re Federal-Mogul Global, Inc., 300 F3d 368, 382 (3d Cir. 2002) (related to jurisdiction exists only where "the allegedly related lawsuit would affect the bankruptcy

proceeding without the intervention of yet another lawsuit.").

II.   Disposition of the Motion

While the Second Circuit has yet to speak definitively on the issue here, the court holds that the adoption of the conceivable effect standard by that court requires a holding that this matter is related to the AHM bankruptcy proceeding, and the motion for remand must therefore be denied.

In so holding, the court agrees with other district courts in the Second Circuit, most notably, with Worldcom. There, the District Court for the Southern District of New York, in a case with facts strikingly similar to those alleged here, held that the 1933 Act case before it was related to a pending bankruptcy of the debtor, Wordcom, Inc. Worldcom was a case brought by New York City pension systems that acquired stock in Worldcom, Inc. Plaintiffs set forth claims pursuant to the 1933 Act, alleging that the named defendants, including underwriters and company directors, made false statements in connection with Worldcom, Inc. bond offerings. As here, plaintiffs in Worldcom, did not name the debtor company as a defendant. Nonetheless, the court held that securities case was sufficiently related to the Worldcom bankruptcy proceeding to support removal.

As here, the Worldcom court noted the Second Circuit's adoption of the conceivable effect standard, and reviewed cases where jurisdiction was premised on a claim of indemnification. That court held that the exercise of bankruptcy jurisdiction was appropriate because of the conceivable effect on the debtor estate. The facts here similarly support such a holding. Defendants support removal with the argument that AHM is liable to indemnify them in the event that they are found liable to Plaintiff. Defendants' claims are contractual in nature

8

pursuant to a Master Mortgage Loan Purchase and Servicing Agreement underlying the sale of the Certificates (the "Master Agreement"). Under the terms of indemnification agreements arising out of transactions involving the Master Agreement, AHM agreed to indemnify and hold harmless Defendants against losses arising out of, inter alia, claims that allege false statements and omissions contained in information provided by AHM.

Based upon the foregoing facts, the court concludes that there is a more than a "reasonable" legal basis for the claims of indemnification. The claims of Defendants here encompass both common law and contractual indemnity alleged to bind AHM. Defendants have already filed proofs of claim in the AHM bankruptcy proceeding. Included are claims for reimbursement of fees and expenses incurred in connection with the defense of this action. Unlike the claims for indemnification, these claims are already partially liquidated and not conditional upon the finding that Defendants are liable to Plaintiff here.

Under these circumstances, and the standard set forth by the Second Circuit as interpreted by courts in this circuit, the court holds that the claims of Plaintiffs have the required conceivable effect on the estate of AHM. Accord Tow, 2004 WL 1660576 *2 (action held to have required conceivable effect on debtor's estate where victory in removed case would reduce losses represented by proofs of claim). Accordingly, this matter is related to the AHM bankruptcy proceedings and removal was proper.

In light of the fact that the court has held that removal is proper under the Bankruptcy Code, the court need not reach the issue of whether removal is also appropriate pursuant to CAFA, and expresses no opinion as to the merits of that argument.

## CONCLUSION

For the foregoing reasons, the motion to remand is denied. The parties are directed to contact the court for the purpose of determining the next phase of this litigation.

SO ORDERED.

```
          /s/
LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE
```

Dated: Central Islip, New York
       August 11, 2008