UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
CITY OF ANN ARBOR EMPLOYEES' RETIREMENT SYSTEM,
Individually and On Behalf of All Others Similarly Situated,

         Plaintiff,

     - against -

CITIGROUP MORTGAGE LOAN TRUST INC., CITIGROUP MORTGAGE LOAN TRUST 2007-2, CITIGROUP MORTGAGE LOAN TRUST 2007-6, CITIGROUP MORTGAGE LOAN TRUST 2007-AHL1, CITIGROUP MORTGAGE LOAN TRUST 2007-AHL2, CITIGROUP MORTGAGE LOAN TRUST 2007-AHL3, CITIGROUP MORTGAGE LOAN TRUST 2007-AMC1, CITIGROUP MORTGAGE LOAN TRUST 2007-AMC2, CITIGROUP MORTGAGE LOAN TRUST 2007-AMC3, CITIGROUP MORTGAGE LOAN TRUST 2007-AMC4, CITIGROUP MORTGAGE LOAN TRUST 2007-AR1, CITIGROUP MORTGAGE LOAN TRUST 2007-AR4, CITIGROUP MORTGAGE LOAN TRUST 2007-AR5, CITIGROUP MORTGAGE LOAN TRUST 2007-AR7, CITIGROUP MORTGAGE LOAN TRUST 2007-OPX1, CITIGROUP MORTGAGE LOAN TRUST 2007-WFHE1, CITIGROUP MORTGAGE LOAN TRUST 2007-WFHE2, CITIGROUP MORTGAGE LOAN TRUST 2007-WFHE3, CITIGROUP MORTGAGE LOAN TRUST 2007-WFHE4, CITIGROUP GLOBAL MARKETS INC., RANDALL COSTA, SCOTT FREIDENRICH, PETER PATRICOLA, MARK I. TSESARSKY, JEFFREY PERLOWITZ and EVELYN ECHEVARRIA,

         Defendants.
-----------------------------------------------------------------------X

08 Civ. 1418 (LDW)

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR DISMISSAL MOTION

CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
(212) 225-2000

Attorneys for Defendants

Of Counsel:

 Lawrence B. Friedman
 Jennifer A. Kennedy
 Theodore S. Geiger

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

I.  ANN ARBOR AND KANSAS CITY DO NOT HAVE STANDING TO
    ASSERT CLAIMS AGAINST 16 OF THE 18 TRUSTS ........................................... 1

    A.  Ann Arbor and Kansas City Do Not Satisfy The Constitutional Or
        Statutory Standing Requirements For Their Section 11 Claims........................ 1

    B.  Ann Arbor and Kansas City Do Not Have Standing To Bring Section
        12(a)(2) Claims Against Any Trust .................................................................. 4

II. ANN ARBOR AND KANSAS CITY DO NOT ADEQUATELY ALLEGE
    FACTS SUFFICIENT TO SUPPORT THEIR CLAIMS........................................... 4

    A.  Plaintiffs Fail To Satisfy The Pleading Requirements Of Rule 8.................... 5

    B.  Plaintiffs Fail To Satisfy The Pleading Requirements Of Rule 9(b) ................ 7

III. PLAINTIFFS HAVE NOT ALLEGED THAT DEFENDANTS FAILED TO
     PERFORM AS PROMISED ...................................................................................... 9

CONCLUSION ..................................................................................................................... 10

## TABLE OF AUTHORITIES

**Rules and Statutes** — Page(s)

15 U.S.C. § 77 .................................................................................................................... 9

Fed. R. Civ. P. 8 ................................................................................................................. 4-6

Fed. R. Civ. P. 9(b) ............................................................................................................. 7-8

**Cases**

Ashcroft v. Iqbal,
556 U.S. __, 129 S.Ct. 1937 (2009) ................................................................................... 5-6

Caiafa v. Sea Containers Ltd.,
No. 08-3006-cv, 2009 WL 1383457 (2d Cir. May 19, 2009) ............................................. 4

Garber v. Legg Mason, Inc.,
537 F. Supp. 2d 597 (S.D.N.Y. 2008) ................................................................................ 9

Gustafson v. Alloyd Co.,
513 U.S. 561 (1995) ........................................................................................................... 4

Harsco Corp. v. Segui,
91 F.3d 337 (2d Cir. 1996) ................................................................................................. 10

Hevesi v. Citigroup, Inc.,
366 F.3d 70 (2d Cir. 2004) ................................................................................................. 2

Hoffman v. UBS-AG,
591 F.Supp. 2d 522 (S.D.N.Y. 2008) ................................................................................. 2

In re AIG Advisor Group,
No. 06 Civ. 1625 (JG), 2007 WL 1213395 (E.D.N.Y. Apr. 25, 2007) ............................... 2

In re Authentidate Holding Corp.,
No. 05 Civ. 5323 (LTS) (DFE), 2006 WL 2034644 (S.D.N.Y. 2006) ............................... 2

In re Countrywide Fin. Corp. Sec. Litig.,
588 F. Supp. 2d 1152 (C.D. Cal. 2008) .............................................................................. 3

In re Dreyfus Aggressive Growth Mut. Fund. Litig.,
No 98 Civ. 4318 (HB), 2000 WL 1357509 (S.D.N.Y. Sept. 20, 2000) .............................. 2

In re Fuwei Films Sec. Litig.,
247 F.R.D. 432 (S.D.N.Y. 2008) .................................................................................... 3

In re Merrill Lynch Inv. Mgmt. Funds Sec. Litig.,
434 F. Supp. 2d 233 (S.D.N.Y. 2006) ............................................................................ 2

In re N2K Inc. Sec. Litig.,
82 F. Supp. 2d 204 (S.D.N.Y. 2000),
aff'd, 202 F.3d 81 (2d Cir. 2000) ................................................................................... 9

In re Regeneron Pharms., Inc. Sec. Litig.,
No. 03 Civ. 3111 (RWS), 2005 U.S. Dist. LEXIS 1350 (S.D.N.Y. Feb. 3, 2005) ............. 8

In re Salomon Analyst Level 3 Litig.,
350 F. Supp. 2d 477 (S.D.N.Y. July 14, 2006) ............................................................... 2

In re Turkcell Iletisim Hizmetler, A.S. Sec. Litig.,
202 F. Supp. 2d 8 (S.D.N.Y. 2001) ................................................................................ 9

In re WorldCom, Inc. Sec. Litig.,
No. 02 Civ. 3288 (DLC) et al., 2004 WL 555697 (S.D.N.Y. Mar. 19, 2004) .................... 3

In re WRT Energy Sec. Litig.,
No. 96 Civ. 3610 (JFK), 1997 WL 576023 (S.D.N.Y. Sept. 15, 1997),
vacated on other grounds, 75 F. App'x 839 (2d Cir. 2003) ............................................ 4

Lone Star Fund V (U.S.), L.P. v. Barclays Bank plc,
No. 3:08-cv-0261-L (SAL), 2008 WL 4449508 (N.D. Tex. Sept. 30, 2008) .................. 10

Ong ex rel. Ong IRA v. Sears, Roebuck & Co.,
388 F. Supp. 2d 871 (N.D. Ill. 2004) .............................................................................. 3

P. Stolz Family P'ship L.P. v. Daum,
355 F.3d 92 (2d Cir. 2004) ............................................................................................. 8

Panther Partners Inc. v. Ikanos Commcn's, Inc.,
538 F. Supp. 2d 662 (S.D.N.Y. 2008) ............................................................................ 9

Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.,
Civ. No. 08-10446 (RGS), 2009 WL 3149775 (D. Mass. Sept. 30, 2009) ................ passim

Yung v. Lee,
432 F.3d 142 (2d Cir. 2005) ........................................................................................... 4

Zirkin v. Quanta Capital Holdings Ltd.,
No. 07 Civ. 851 (RPP), 2009 WL 185940 (S.D.N.Y. Jan. 23, 2009) ............................... 8

**Other Authorities**

17 C.F.R. §§ 229.1100 – 1123 (2009) ................................................................................. 8

17 C.F.R. § 229.1111(a)(3) (2009) ...................................................................................... 8

Asset-Backed Securities, Securities Act Release No. 8518, Exchange Act Release No. 50,905, 70 Fed. Reg. 1506, 1581 (Jan. 7, 2005) .................................................................. 8

Defendants submit this reply memorandum in support of their dismissal motion.[1]

## I. ANN ARBOR AND KANSAS CITY DO NOT HAVE STANDING TO ASSERT CLAIMS AGAINST 16 OF THE 18 TRUSTS

Because Ann Arbor and Kansas City purchased Certificates from only two of the 18 Trusts, they cannot pursue Section 11 claims on behalf of purchasers from the other 16 Trusts. And because they have failed to plead that they purchased any Certificates in any initial public offering, they cannot pursue any Section 12(a)(2) claims.

### A. Ann Arbor and Kansas City Do Not Satisfy The Constitutional Or Statutory Standing Requirements For Their Section 11 Claims

Because Ann Arbor and Kansas City did not purchase any Certificates from 16 of the 18 Trusts, they cannot satisfy Article III's standing requirements as to those 16 Trusts. Mem. at 6-7. This conclusion is compelled by the caselaw Defendants cited in their opening brief, and was reaffirmed last month by the Massachusetts District Court's decision in Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp., Civ. No. 08-10446 (RGS), 2009 WL 3149775 (D. Mass. Sept. 30, 2009). There, three named plaintiffs which had purchased certificates in only two trusts, nonetheless purported to represent a class of purchasers of certificates issued by those two and six additional trusts — which, as here, were separate legal entities that made separate offerings backed by distinct pools of mortgages originated by multiple lenders and pursuant to separate prospectus supplements. The court ruled that, as dictated by "the overwhelming weight of authority," the named plaintiffs could assert claims **only** on behalf of purchasers of certificates from the two trusts from which the named

---

[1] Terms defined in Defendants' Opening Brief ("Mem.") are used similarly here. Unless otherwise indicated, cited exhibits are attached to the Declaration of Jennifer A. Kennedy ("Kennedy Decl.") in Support of Defendants' Dismissal Motion. Ann Arbor's and Kansas City's opposition brief is cited herein as "Opp."

1

plaintiffs had purchased. Nomura, 2009 WL 3149775, at *3-4. That ruling applies here, and the Court should dismiss all claims concerning 16 of the 18 Trusts.[2]

Plaintiffs seek to defer the dismissal of their claims for lack of standing until the class-certification stage, Opp. at 6-7, as did the unsuccessful Nomura plaintiffs. But as in Nomura, courts have repeatedly and resoundingly rejected such a deferral, and this Court should do the same. A delay in addressing standing would improperly substitute the standards for naming a lead plaintiff under the PSLRA with the blackletter rule that at least one named plaintiff **must** have standing for each offering that a class purports to challenge. See Hoffman v. UBS-AG, 591 F.Supp. 2d 522, 531 (S.D.N.Y. 2008); In re AIG Advisor Group, No. 06 Civ. 1625 (JG), 2007 WL 1213395, at *5 (E.D.N.Y. Apr. 25, 2007); Nomura 2009 WL 3149775, at *3.[3] For this same reason, the Court should reject Ann Arbor's and Kansas City's contention that their appointment as lead plaintiffs under the PSLRA gives them standing to sue on any potential plaintiffs' claims. Opp. at 6-7. A lead plaintiff can assert claims that it does not have standing to bring only when at least one other named plaintiff has such standing. The PSLRA does not confer standing on a lead plaintiff when **no** named plaintiff can bring the claim. See, e.g., In re Authentidate Holding Corp., No. 05 Civ. 5323 (LTS) (DFE), 2006 WL 2034644, at *7 (S.D.N.Y. 2006); In re Salomon Analyst Level 3 Litig., 350 F. Supp. 2d 477, 496 (S.D.N.Y. July 14, 2006).[4]

---

[2] Ann Arbor and Kansas City argue they have Article III standing as to all 18 Trusts because the injuries they allegedly suffered arose from the same harmful conduct as the injuries of the purchasers from the other 16 Trusts. Opp. at 10-11. That is incorrect. As the Amended Complaint confirms, the allegations regarding each Trust are distinct from one another, because each Trust is backed by **unique** Mortgage Loans issued by **different originators** about which Plaintiffs make **different allegations**.

[3] In re Dreyfus Aggressive Growth Mut. Fund. Litig., No 98 Civ. 4318 (HB), 2000 WL 1357509 (S.D.N.Y. Sept. 20, 2000), the only precedent cited by Plaintiffs, has been repeatedly rejected. See, e.g., Hoffman, 591 F. Supp. 2d at 531-32; In re Merrill Lynch Inv. Mgmt. Funds Sec. Litig., 434 F. Supp. 2d 233, 236 n.8 (S.D.N.Y. 2006).

[4] The precedents Plaintiffs cite underscore this point. In Hevesi v. Citigroup, Inc., 366 F.3d 70, 81-84 (2d Cir. 2004), the lead plaintiff was allowed to assert class claims on behalf of bondholders, despite only having

Finally, the Court should reject Ann Arbor's and Kansas City's argument that they meet Section 11's statutory standing requirements. Quoting Section 11's terms, courts have consistently limited standing in this context to "any person acquiring <u>such security</u>" with respect to which the plaintiff alleges a material misstatement or omission. As <u>Nomura</u> reaffirms, "such security" includes only the security that was sold pursuant to the specific offering materials that are accused of being defective, **not** securities sold in other distinct offerings, even if they all share a common shelf registration statement. Mem. at 7-10. <u>Accord</u> <u>Nomura</u>, 2009 WL 3149775, at *4 n.3; Oral Arg. Tr. (Ex. T), at 62 in <u>La. Mun. Police Employees Ret. Sys. v. Merrill Lynch & Co.</u>, No. 08 Civ. 9063 (JSR) (S.D.N.Y. Feb. 19, 2009); <u>Ong ex rel. Ong IRA v. Sears, Roebuck & Co.</u>, 388 F. Supp. 2d 871, 891-92 (N.D. Ill. 2004). Here, each offering of Certificates in each of the 18 Trusts was made pursuant to a unique prospectus supplement issued solely for that Trust. Accordingly, the term "such security" in Section 11 precludes Ann Arbor and Kansas City from asserting claims concerning Certificates they did not purchase.[5]

---

purchased common stock, precisely because other named plaintiffs had purchased bonds. And in <u>In re Fuwei Films Sec. Litig.</u>, 247 F.R.D. 432, 438 (S.D.N.Y. 2008), while standing was not at issue in the pending motion to appoint lead plaintiff, the court presumably would have fully addressed standing if the prospective co-lead plaintiff were to be made a named plaintiff.

[5] The precedents Plaintiffs cite are distinguishable. The court in <u>In re Countrywide Fin. Corp. Sec. Litig.</u>, 588 F. Supp. 2d 1152, 1167 (C.D. Cal. 2008), allowed a named plaintiff to proceed with claims relating to both securities it had purchased and those it had not purchased where the allegations were premised on the same flawed disclosures in several financial statements published by a **single** loan originator, Countrywide. Here, by contrast, the Certificates are based on loans made by **multiple** originators, about which Plaintiffs make distinct allegations. See <u>supra</u> n.2. Similarly, the court in <u>In re WorldCom, Inc. Sec. Litig.</u>, No. 02 Civ. 3288 (DLC) et al., 2004 WL 555697, at *7 (S.D.N.Y. Mar. 19, 2004), held that plaintiffs had standing for claims relating to a second offering issued by defendants on the same day as the one in which plaintiffs had purchased securities. Here, by contrast, the allegations regarding each Trust are unique; each Trust issued its Certificates at different points in time, backed by unique Mortgage Loans made by different originators, and about which Plaintiffs make different allegations.

B. **Ann Arbor and Kansas City Do Not Have Standing To Bring Section 12(a)(2) Claims Against Any Trust**

Only purchasers in an initial public offering have standing to sue under Section 12(a)(2). Secondary-market purchasers lack such standing. Gustafson v. Alloyd Co., 513 U.S. 561, 584 (1995); Yung v. Lee, 432 F.3d 142, 149 (2d Cir. 2005). Plaintiffs attempt to evade this rule by alleging generically that they "acquired" securities "pursuant and traceable" to the Offering Materials. AC ¶¶ 10-11. But courts have rejected this artful dodge as insufficient to satisfy Section 12(a)(2)'s requirement that a plaintiff affirmatively plead he purchased securities in an initial offering, which Ann Arbor and Kansas City conspicuously have not done — not in their two complaints, not in their PSLRA certifications and not in their opposition to the instant motion. See Nomura, 2009 WL 3149775, at *4 ("If plaintiffs did in fact purchase the Certificates directly from the defendants, they should have said so. An evasive circumlocution does not suffice as a substitute.") (citing In re WRT Energy Sec. Litig., No. 96 Civ. 3610 (JFK), 1997 WL 576023 (S.D.N.Y. Sept. 15, 1997), vacated on other grounds, 75 F. App'x 839 (2d Cir. 2003)).[6] Accordingly, the Court should dismiss their Section 12(a)(2) claims.

II. **ANN ARBOR AND KANSAS CITY DO NOT ADEQUATELY ALLEGE FACTS SUFFICIENT TO SUPPORT THEIR CLAIMS**

Plaintiffs contend in their Amended Complaint, based on overly generalized allegations that violate Federal Rule of Civil Procedure 8, that Defendants are responsible for material misstatements and omissions in the Offering Materials concerning the underwriting

---

[6] Ironically, while Plaintiffs rely upon Caiafa v. Sea Containers Ltd., No. 08-3006-cv, 2009 WL 1383457, at *2 (2d Cir. May 19, 2009), where the plaintiffs' PSLRA certifications confirmed that they acquired the securities in the secondary market and thus lacked standing, they overlook the fact that the PSLRA certifications filed in this case conclusively establish that at least Kansas City acquired its Certificates in the secondary market, because it made its purchase approximately five months after the initial offering date. Compare Decl. of David Rosenfeld, Dkt. No. 44, Ex. A (Kansas City purchased AR5 certificates on August 23 and 24, 2007) with 2007-AR5 Trust (Kennedy Decl., Ex. D) (initial offering date on or about March 29, 2007).

4

standards, appraisals, loan-to-value ratios, debt-to-income ratios and ratings for the Mortgage Loans and the Certificates, disregarding entirely the Offering Materials' copious risk-factor disclosures addressing each of these subjects. Confronted with Defendants' showing in their Opening Brief that these risk-factor disclosures render the alleged misstatements or omissions immaterial, Plaintiffs switch tracks, and now allege the risk disclosures themselves were false. Opp. at 14-18. This tactic fails too, because according to Plaintiffs' arguments and governing law, the risk disclosures can be false **only** if Defendants **knew** them to be false when made, but Plaintiffs affirmatively disclaim alleging such knowledge. Further, Plaintiffs' allegations do not satisfy Rule 9(b), as they must to properly allege Defendants knew these risk disclosures were false.

### A. Plaintiffs Fail To Satisfy The Pleading Requirements Of Rule 8

Blatantly violating Rule 8, the Amended Complaint makes no connection between its generalized allegations about reports of misconduct in mortgage-backed-securities offerings generally and the Mortgage Loans underlying the Certificates. Notably, Plaintiffs do not deny this fatal flaw in their pleading. Instead, they concede by silence that they only (a) allege facts regarding instances in which loan originators deviated from stated underwriting standards; (b) draw the unfounded conclusion that such practices were systemic; and then (c) rely on a double inference that (1) the Mortgage Loans offered to the Trusts were defective, and (2) Defendants did not reject these loans before including them in the pools underlying the Trusts. These unsubstantiated inferences are wholly inadequate to show "more than a sheer possibility that a defendant has acted unlawfully" and push the claims "across the line from conceivable to plausible." Ashcroft v. Iqbal, 556 U.S. __, 129 S.Ct. 1937, 1949,

1951 (2009) (internal quotation marks and citation omitted).[7]  The <u>Nomura</u> court specifically rejected this type of pleading, noting, for example, "[t]hat questionable appraisal practices were a common problem in the industry as a whole, without more, tells nothing about the Trusts' underlying loans."  <u>Nomura</u>, 2009 WL 3149775, at *6.

This type of unacceptable pleading by multiple inference is particularly characteristic of Plaintiffs' allegations regarding Wells Fargo, the sole originator for the two Trusts as to which Ann Arbor and Kansas City have standing.  Wells Fargo originated $566 billion in home mortgage loans in 2006 and 2007.[8]  The Trusts in which Plaintiffs purchased Certificates are backed by loans constituting <u>less than one half of one percent</u> of this total.[9]  Even if true, Plaintiffs' allegations regarding origination practices in Wells Fargo offices in Des Moines and Baltimore cannot support the inference that all of Wells Fargo's $566 billion in loans, or even a significant number of them, let alone the Mortgage Loans underlying the Certificates, were originated with deviations from the underwriting practices described in the Offering Materials.  Because the incidents Plaintiffs allege are not linked to the Mortgage Loans, they do not establish a facial plausibility that such incidents affected the Mortgage Loans, <u>see</u> <u>Iqbal</u>, 129 S.Ct. at 1949-50 and Mem. at 17 n.20, and the Court should therefore dismiss Plaintiffs' claims under Rule 8.

---

[7] For example, the allegations regarding Argent concern its deficient loan underwriting in Miami and Chicago AC ¶¶ 162-166.  There is no allegation that any of the complained-of loans underlie any of the Trusts.  Similarly, the Amended Complaint bases its allegations regarding Countrywide's appraisal practices on alleged misdeeds committed by a handful of appraisers.  AC ¶¶ 136-142.  Plaintiffs do not contend that loans appraised by any of these persons were included in any Trust.  Plaintiffs allege isolated incidents where inappropriate ratings may have been given, but do not connect these incidents to the ratings for the Trusts.  AC ¶¶ 220-237.

[8] <u>See</u> Wells Fargo 2007 Annual Report, at 47 (2008), https://www.wellsfargo.com/downloads/pdf/invest_relations/wf2007annualreport.pdf.

[9] <u>See</u> 2007-WFHE2 Trust (Ex. C), at 6 (aggregate principal balance of $1,005,346,178); 2007-AR5 Trust (Ex. D), at S-6 (aggregate principal balance of $931,023,677).

B.  **Plaintiffs Fail To Satisfy The Pleading Requirements Of Rule 9(b)**

Recognizing the futility of their allegations in light of the comprehensive array of risk factors in the Offering Materials, Plaintiffs now argue that the risk factors themselves were false, contending that the risks about which Defendants had warned prospective investors were not contingent, and instead had already materialized. Opp. at 14-18.[10] But this new argument requires a showing that Defendants **knew** the risks had already materialized, and is therefore an allegation that sounds in fraud and must be pleaded in conformity with Rule 9(b), which the Amended Complaint fails to do, as Plaintiffs concede. AC ¶¶ 240, 251 (Plaintiffs "expressly exclude and disclaim any allegation that could be construed as alleging fraud or intentional or reckless misconduct . . .").

In particular, Plaintiffs argue that Defendants' risk disclosures were false because they are conditional in nature — for example, they disclose that originators' underwriting practices **might** differ from what is described — and, according to Plaintiffs, the conditions disclosed had already occurred, e.g., underwriters were deviating from the stated underwriting practices. Opp. at 14-18. But these risk disclosures could only have been false when made — as Plaintiffs concede is their burden to allege and prove, Opp. at 12-13 — only if Defendants **knew** that the subjects of their warnings had already come to fruition. That is because a disclosure that a condition **might** exist embraces the possibility that it **does** already exist, and would be false only if the speaker **knew** it already existed, and is not contingent at all. For example, a statement that "George might have the flu" is only false if, at the time the

---

[10] Plaintiffs' new tack avoids confronting the indisputable conclusion that the Offering Materials' extensive risk disclosures render immaterial the purported misstatements and omissions upon which Plaintiffs rely. Again, last month's Nomura decision is directly on point; the court there dismissed similar Section 11 claims, noting that "[p]laintiffs' argument that they were not on notice of the originators 'soft' underwriting practices begs credulity," in light of repeated disclosure that the loans had been originated under limited documentation programs and the "fusillade of cautionary statements" in the offering materials. 2009 WL 3149775, at *6. The same is true here.

statement was made, the speaker **knew** that George already had (or did not have) the flu; in that circumstance, the word "might" would be false. But as noted above, Plaintiffs specifically disclaim alleging any such knowledge at all, let alone with the specificity required by Rule 9(b). Where, as here, "the Complaint implies an intentional scheme of misconduct," it must satisfy Rule 9(b). Zirkin v. Quanta Capital Holdings Ltd., No. 07 Civ. 851 (RPP), 2009 WL 185940, at *11-12 (S.D.N.Y. Jan. 23, 2009).[11]

Governing SEC regulations and caselaw in this Circuit confirm that Plaintiffs' attack on Defendants' risk disclosures fails because Plaintiffs have not alleged Defendants knew the disclosures were false. The Offering Materials are governed by SEC Regulation AB, because they concern asset-backed securities. See 17 C.F.R. §§ 229.1100 – 1123 (2009); Asset-Backed Securities, Securities Act Release No. 8518, Exchange Act Release No. 50,905, 70 Fed. Reg. 1506, 1581 (Jan. 7, 2005). With respect to underwriting guidelines applicable to loans underlying the securities, Regulation AB requires:

> [a] description of the solicitation, credit-granting or underwriting criteria used to originate or purchase the pool assets, including, **to the extent known,** any changes in such criteria and the extent to which such policies and criteria are or could be overridden.

17 C.F.R. § 229.1111(a)(3) (2009) (emphasis added). Regulation AB therefore only required Defendants to disclose what they **knew** about departures from the underwriting criteria for the Mortgage Loans, which is the common focus of Plaintiffs' allegations. Plaintiffs' theory disregards this limitation in Regulation AB, and seeks to hold Defendants liable despite

---

[11] Indeed, the precedents Plaintiffs cite to support their argument that the disclosures were false confirm that, in these circumstances, Plaintiffs must plead Defendants' knowledge of the falsity. See Opp. at 15-16 (citing P. Stolz Family P'ship L.P. v. Daum, 355 F.3d 92, 97 (2d Cir. 2004) ("It would be perverse indeed if an offeror could **knowingly** misrepresent historical facts but at the same time disclaim to those misrepresented facts with cautionary language.") (emphasis added) and In re Regeneron Pharms., Inc. Sec. Litig., No. 03 Civ. 3111 (RWS), 2005 U.S. Dist. LEXIS 1350, at *54 (S.D.N.Y. Feb. 3, 2005) ("A warning that fails to disclose specific **known** facts is insufficiently precise and will not insulate Defendants' statements from liability . . . .") (emphasis added)).

8

Plaintiffs' disclaimer of any proof of such knowledge by Defendants.  See AC ¶¶ 240, 251. Courts in this circuit have rejected prior attempts to brand disclosures as false under Section 11 in disregard of SEC rules requiring disclosure only of what is known, and this Court should do the same.  See, e.g., Garber v. Legg Mason, Inc., 537 F. Supp. 2d 597, 611 (S.D.N.Y. 2008) (dismissing Section 11 claim where regulation required disclosure of "known trends" and plaintiff failed to allege defendants' knowledge of omitted information).[12]

### III. PLAINTIFFS HAVE NOT ALLEGED THAT DEFENDANTS FAILED TO PERFORM AS PROMISED

Defendants represented in the Offering Materials only that the Mortgage Loans underlying the Trusts **either** would conform to the specified criteria **or** would be rendered conforming, through the repurchase, substitution or cure of any non-conforming loan. Plaintiffs still do not allege that Defendants failed to perform as represented, which is not surprising because Plaintiffs have not identified any particular Mortgage Loan that was non-conforming, or for which Defendants did not fulfill their obligations.  Instead, Plaintiffs merely contend that the Offering Materials' representation that a non-conforming Mortgage Loan would be repurchased, substituted for or cured is an unenforceable waiver of remedies under the federal securities laws.  But the only court to address this issue has ruled precisely to the contrary, and properly so, concluding that this "'repurchase or substitute' language [is]

---

[12] See also Panther Partners Inc. v. Ikanos Commcn's, Inc., 538 F. Supp. 2d 662, 672-73 (S.D.N.Y. 2008) (same); In re Turkcell Iletisim Hizmetler, A.S. Sec. Litig., 202 F. Supp. 2d 8, 13 (S.D.N.Y. 2001) (same).

"The relevant SEC regulations answer the question as to what material facts are required to be stated in an issuer's registration statement and prospectus." In re N2K Inc. Sec. Litig., 82 F. Supp. 2d 204, 207 (S.D.N.Y. 2000), aff'd, 202 F.3d 81 (2d Cir. 2000).  See also Panther Partners, 538 F. Supp. 2d at 668 ("Whether a duty to disclose exists [under Section 11] depends largely on the itemized disclosures required by the securities laws and the regulations promulgated thereunder.").  Thus, Defendants are not attempting to engraft a scienter requirement on Plaintiffs' Section 11 claims, but rather are merely noting that, according to Plaintiffs' own characterization of their allegations, and consistent with Regulation AB, they must allege Defendants **knew** that the risks Defendants warned about had already occurred.

9

part of the representations" made to purchasers, and in particular it is a "represent[ation] that the loans are — or will be made — compliant," and accordingly does not offend the Securities Act's anti-waiver provisions.  <u>Lone Star Fund V (U.S.), L.P. v. Barclays Bank plc</u>, No. 3:08-cv-0261-L (SAL), 2008 WL 4449508, at *10-11 (N.D. Tex. Sept. 30, 2008); see also <u>Harsco Corp. v. Segui</u>, 91 F.3d 337, 344 (2d Cir. 1996) (rejecting argument that plaintiff had waived protections of the securities laws by agreeing to "rigorously defined" rights).[13]  Because Plaintiffs have not alleged that Defendants have failed to perform as promised, Plaintiffs have failed to plead any actionable wrongdoing.

## CONCLUSION

For the foregoing reasons, and those stated previously, the Court should dismiss the Amended Complaint.  Further, because the Amended Complaint's defects are incurable, the Court should not grant Plaintiffs leave to replead.

Dated:   New York, New York
         October 30, 2009

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: _____
    Lawrence B. Friedman,
    A Member of the Firm

One Liberty Plaza
New York, New York 10006
(212) 225-2000

Attorneys for Defendants

---

[13] Plaintiffs are flatly wrong in stating that <u>Lone Star</u> "only addressed waiver law and Texas state law remedies . . . not the federal Securities Act." Opp. at 24-25. <u>Lone Star</u> expressly considers 15 U.S.C. § 77n, and finds it inapplicable. <u>See</u> 2008 WL 4449508, at *9, *11 ("Because the court considers the 'repurchase or substitute' language to be part of the representations made by Defendants, it determines that they have not offended the anti-waiver statutes of federal or state law . . . .").