UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————————— x
CITY OF ANN ARBOR EMPLOYEES'          :     Civil Action No. 08-CV-01418
RETIREMENT SYSTEM, et al., Individually  :
and On Behalf of All Others Similarly Situated, :     CLASS ACTION
                                      :
                      Plaintiffs,     :     LEAD PLAINTIFFS' MEMORANDUM OF
                                      :     LAW IN SUPPORT OF UNOPPOSED
          vs.                         :     MOTION FOR: (1) PRELIMINARY
                                      :     APPROVAL OF SETTLEMENT, (2)
CITIGROUP MORTGAGE LOAN TRUST         :     CERTIFICATION OF THE CLASS FOR
INC., et al.                          :     PURPOSES OF SETTLEMENT, (3)
                                      :     APPROVAL OF NOTICE TO THE CLASS,
                      Defendants.     :     AND (4) SCHEDULING OF A FINAL
———————————————————— x     APPROVAL HEARING

705822_1

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   BACKGROUND ON THE LITIGATION ............................................................. 3

III.  ARGUMENT ........................................................................................................ 6

    A.    The Proposed Settlement Warrants Preliminary Approval ....................... 6

        1.    The Proposed Settlement Is the Result of Well Informed, Good Faith, Arm's-Length Negotiations ................................................. 8

        2.    The Proposed Settlement Falls Within the Range of Reasonableness and Merits Issuance of Notice and a Hearing on Final Approval ............................................................................... 9

        3.    The Settlement Has No Obvious Deficiencies ........................... 11

IV.   CERTIFICATION OF THE SETTLEMENT CLASS FOR SETTLEMENT PURPOSES IS APPROPRIATE ....................................................................... 12

    A.    The Settlement Class Satisfies the Requirements of Rule 23(a) ........... 14

        1.    The Settlement Class Members Are Too Numerous to Be Joined ........... 14

        2.    There Are Common Questions of Law and Fact ........................ 15

        3.    The Class Representatives' Claims Are Typical of Those of the Settlement Class ....................................................................... 16

        4.    The Class Representatives Will Fairly and Adequately Protect the Interests of the Settlement Class ........................................... 17

    B.    The Class Representatives' Claims Satisfy the Prerequisites of Rule 23(b)(3) ......................................................................................... 18

        1.    Common Legal and Factual Questions Predominate ................. 19

        2.    A Class Action Is Superior to Other Methods of Adjudication ......... 20

V.    NOTICE TO THE SETTLEMENT CLASS SHOULD BE APPROVED ......... 21

VI.   PROPOSED SCHEDULE OF EVENTS ........................................................... 24

VII.  CONCLUSION ................................................................................................... 25

# TABLE OF AUTHORITIES

**Page**

## CASES

*Amchem Prods. v. Windsor,*
  521 U.S. 591 (1997) ................................................................................................ 13, 19, 21

*Cent. States Se. & Sw. Areas Health & Welfare Fund v.*
*Merck-Medco Managed Care, LLC,*
  504 F.3d 229 (2d Cir. 2007) ........................................................................................ 14, 15

*City of Detroit v. Grinnell Corp.,*
  495 F.2d 448 (2d Cir. 1974) ................................................................................................ 7

*Consol. Rail Corp. v. Town of Hyde Park,*
  47 F.3d 473 (2d Cir. 1995) ................................................................................................ 14

*Denney v. Deutsche Bank AG,*
  443 F.3d 253 (2d Cir. 2006) .............................................................................................. 13

*Hicks v. Morgan Stanley & Co.,*
  No. 01 Civ. 10071(HB), 2003 WL 21672085
  (S.D.N.Y. July 16, 2003) ................................................................................................... 18

*In re American Int'l Grp., Inc. Sec. Litig.,*
  No. 10-4401-cv, 2012 WL 3264048
  (2d Cir. Aug. 13, 2012)...................................................................................................... 13

*In re Beef Indus. Antitrust Litig.,*
  607 F.2d 167 (5th Cir. 1979) ............................................................................................. 13

*In re Blech Sec. Litig.,*
  187 F.R.D. 97 (S.D.N.Y. 1999)..................................................................................... 19, 20

*In re Currency Conversion Fee Antitrust Litig.,*
  No. MDL 1409, 2006 WL 3247396
  (S.D.N.Y. Nov. 8, 2006)....................................................................................................... 6

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.,*
  248 F.R.D. 483 (E.D. Mich. 2008) ...................................................................................... 8

*In re Drexel Burnham Lambert Group, Inc.,*
  960 F.2d 285 (2d Cir. 1992) .............................................................................................. 17

705822_1

Page

*In re Dynex Capital, Inc. Sec. Litig.*,
   No. 05 CIV. 1897 (HB), 2011 WL 781215
   (S.D.N.Y. Mar. 7, 2011) ..................................................................................................16

*In re Globalstar Sec. Litig.*,
   No. 01 Civ. 1745 (PKC), 2004 WL 2754674
   (S.D.N.Y. Dec. 1, 2004) ..................................................................................................15

*In re Initial Pub. Offering Sec. Litig.*,
   226 F.R.D. 186 (S.D.N.Y. 2005)........................................................................................7

*In re Initial Pub. Offering Sec. Litig.*,
   243 F.R.D. 79 (S.D.N.Y. 2007).............................................................................7, 15, 19

*In re Marsh & McLennan Cos. Sec. Litig.*,
   No. 04 Civ 8144 (CM), 2009 WL 5178546
   (S.D.N.Y. Dec. 23, 2009) ...........................................................................................*passim*

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
   No. 02 MDL 1484 (JFK), 2007 WL 4526593
   (S.D.N.Y. Dec. 20, 2007) ................................................................................................10

*In re Monster Worldwide, Inc. Sec. Litig.*,
   251 F.R.D. 132 (S.D.N.Y. 2008)................................................................................17, 20

*In re NASDAQ Market-Makers Antitrust Litig.*,
   176 F.R.D. 99 (S.D.N.Y. 1997)........................................................................................6, 7

*In re Oxford Health Plans, Inc., Sec. Litig.*,
   191 F.R.D. 369 (S.D.N.Y. 2000).............................................................................15, 16, 17

*In re Polaroid ERISA Litig.*,
   240 F.R.D. 65 (S.D.N.Y. 2006).........................................................................................17

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
   163 F.R.D. 200 (S.D.N.Y. 1995).............................................................................6, 7, 11, 13

*In re Vivendi Universal, S.A. Sec. Litig.*,
   242 F.R.D. 76 (S.D.N.Y. 2007).........................................................................................16

*In re Warner Chilcott Ltd. Sec. Litig.*,
   No. 06 Civ. 11515(WHP), 2008 WL 5110904
   (S.D.N.Y. Nov. 20, 2008)..................................................................................................24

- iii -

**Page**

*In re Wells Fargo Mortg.-Backed Certificates Litig.*,
No. 09-CV-1376-LHK (PSG)
(N.D. Cal. Nov. 14, 2011) ....................................................................................... 8, 9

*In re WorldCom, Inc. Sec. Litig.*,
219 F.R.D. 267 (S.D.N.Y. 2003) ................................................................................. 18

*Katz v. Image Innovations Holdings, Inc.*,
No. 06 Civ. 3707(JGK), 2010 WL 2926196
(S.D.N.Y. July 22, 2010) ............................................................................................ 17

*Leung v. Home Boy Rest. Inc.*,
No. 07 Civ. 8779 (RJS) (DFE), 2009 WL 398861
(S.D.N.Y. Feb. 18, 2009) .............................................................................................. 8

*Mass. Bricklayers and Masons Trust Funds v.*
*Deutsche Alt-A Sec., Inc., et al.*,
No. 2:08-cv-03178-LDW-ARL
(E.D.N.Y. July 11, 2012) ............................................................................................... 8

*Moore v. PaineWebber, Inc.*,
306 F.3d 1247 (2d Cir. 2002) ...................................................................................... 19

*N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*,
No. 08 Civ. 5653 (PAC), 2011 U.S. Dist. LEXIS 92597
(S.D.N.Y. Aug. 16, 2011) ............................................................................................ 10

*N.J. Carpenters Health Fund v. Residential Capital, LLC*,
272 F.R.D. 160 (S.D.N.Y. 2011), *aff'd sub nom.*
*N.J. Carpenters Health Fund v. Rali Series 2006-Q01*,
No. 11-1683-CV, 2012 U.S. App. LEXIS 8675
(2d Cir. Apr. 30, 2012) ................................................................................................ 10

*Plumbers' Union Local No. 12 Pension Fund v.*
*Nomura Asset Acceptance Corp.*,
658 F. Supp. 2d 299 (D. Mass. 2009),
*aff'd in part and vacated in part*,
632 F.3d 762 (1st Cir. 2011) ........................................................................................ 10

*Pub. Emps. Ret. Sys. of Miss., et al. v.*
*Merrill Lynch & Co. Inc., et al.*,
No. 08-cv-10841-JSR-JLC
(S.D.N.Y. Dec. 15, 2011) ............................................................................................... 9

705822_1

**Page**

*Pub. Emps. Ret. Sys. of Miss. v. Merrill Lynch & Co.,*
277 F.R.D. 97 (S.D.N.Y. 2011) ........................................................................................... 10

*Robidoux v. Celani,*
987 F.2d 931 (2d Cir. 1993) ....................................................................................14, 15, 16

*Robinson v. Metro-N. Commuter R.R. Co.,*
267 F.3d 147 (2d Cir. 2001) .............................................................................................. 15

*Teachers' Ret. Sys. of La. v. ACLN Ltd.,*
No. 01 Civ. 11814(LAP), 2004 WL 2997957
(S.D.N.Y. Dec. 27, 2004) ................................................................................................... 16

*Torres v. Gristede's Operating Corp.,*
No. 04-CV-3316 (PAC), 2010 WL 2572937
(S.D.N.Y. June 1, 2010) ....................................................................................................... 6

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,*
396 F.3d 96 (2d Cir. 2005) .......................................................................................6, 8, 23

*Weinberger v. Kendrick,*
698 F.2d 61 (2d Cir. 1982) ................................................................................................ 13

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
§77k ..........................................................................................................................3, 4
§77l ...........................................................................................................................3, 4
§77l(b).........................................................................................................................11
§77o ...........................................................................................................................3, 4
§77z-1(a)(4) .................................................................................................................22
§77z-1(a)(7) .................................................................................................................23
§77z-1(a)(7)(A) ...........................................................................................................22
§77z-1(a)(7)(B) ...........................................................................................................22
§77z-1(a)(7)(C) ...........................................................................................................22
§77z-1(a)(7)(D) ...........................................................................................................22
§77z-1(a)(7)(E) ...........................................................................................................22

**Page**

Federal Rules of Civil Procedure

Rule 23 .................................................................................................20, 24
Rule 23(a) ....................................................................................12, 13, 14, 15
Rule 23(a)(1) ..........................................................................................14
Rule 23(a)(2) .....................................................................................15, 16
Rule 23(a)(3) ..........................................................................................16
Rule 23(a)(4) .....................................................................................17, 18
Rule 23(b) .............................................................................................13
Rule 23(b)(3) ......................................................................................*passim*
Rule 23(e)(1) ..........................................................................................21
Rule 23(e) ...............................................................................................6
Rule 23(h)(1) ..........................................................................................22

.

705822_1

Lead Plaintiffs City of Ann Arbor Employees' Retirement System ("Ann Arbor ERS") and Greater Kansas City Laborers Pension Fund ("Kansas City Laborers") (collectively, "Lead Plaintiffs")[1] respectfully submit this memorandum of law in support of their unopposed motion for: (i) preliminary approval of the settlement ("Settlement") of this securities class action (the "Litigation") which has been reached with the Defendants;[2] (ii) certification of a Settlement Class for purposes of the Settlement; (iii) approval of the form and manner of notice to Settlement Class Members; and (iv) the scheduling of a hearing (the "Final Approval Hearing") for final approval of the Settlement, the Plan of Allocation of the settlement proceeds, and Lead Counsel's motion for an award of attorneys' fees and expenses.

## I.   INTRODUCTION

Lead Plaintiffs and Defendants have reached an agreement to settle this securities class action for $24,975,000 in cash on the terms set forth in the Stipulation. The Settlement, if approved, will resolve all claims asserted against the Defendants in the Litigation.

The Settlement was reached at a time when the Settling Parties understood the strengths and weaknesses of their respective positions. Specifically, Lead Plaintiffs and Lead Counsel conducted an extensive informal investigation of the facts, filed two consolidated complaints, opposed two rounds of motions to dismiss, fully briefed a motion for class certification, and undertook significant

---

[1]   All capitalized terms not otherwise defined herein have the same meanings as in the Stipulation of Settlement (the "Stipulation"), dated as of August 16, 2012. The Stipulation is submitted as Exhibit 1 to the accompanying Declaration of Thomas E. Egler in Support of Lead Plaintiffs' Unopposed Motion for: (1) Preliminary Approval of Settlement, (2) Certification of the Class for Purposes of Settlement, (3) Approval of Notice to the Class, and (4) Scheduling of a Final Approval Hearing ("Egler Decl.").

[2]   The Defendants are Citigroup Mortgage Loan Trust Inc., Citigroup Global Markets Inc., Randall Costa, Scott Friedenrich, Peter Patricola, Mark I. Tsesarsky, Jeffrey Perlowitz and Evelyn Echevarria.

formal fact discovery, including reviewing and analyzing several million pages of documents and deposing a number of current and former Citigroup employees. Defendants deposed the Lead Plaintiffs, their investment managers and class certification expert and Lead Counsel deposed Defendants' class certification expert. Lead Plaintiffs also worked with experts in analyzing the factual record and the Settlement Class's damages.

In the Fall of 2011, the Settling Parties engaged in extensive arm's-length settlement negotiations and participated in a full-day mediation before former United States District Judge Layn R. Phillips (Ret.), an experienced and highly respected mediator. The mediator's recommendation ultimately resulted in this Settlement. Lead Plaintiffs and Lead Counsel – based upon their evaluation of the facts and applicable law and the substantial risk and expense of continued litigation – submit that the proposed Settlement is in the best interests of the Settlement Class.

Prior to the Final Approval Hearing, Lead Plaintiffs will submit more detailed papers supporting the proposed Settlement and will ask the Court to determine whether the Settlement is fair, reasonable, and adequate. At this time, Lead Plaintiffs request only that the Court grant preliminary approval of the Settlement so that notice of it may be provided to the Settlement Class. Specifically, Lead Plaintiffs request that the Court enter the proposed Order Preliminarily Approving Settlement and Providing for Notice (the "Preliminary Approval Order"), submitted herewith, which will:

    (i)     preliminarily approve the Settlement and certify the Settlement Class;

    (ii)    approve the form and content of the Notice, Proof of Claim form and Summary Notice, attached as Exhibits A-1, A-2 and A-3 to the Stipulation, respectively; and

    (iii)   schedule the Final Approval Hearing and set a schedule and procedures for settlement-related events: disseminating the notices; deadlines for requesting exclusion or objecting to the Settlement; and submitting papers in support of final approval of the Settlement.

- 2 -

Because the Settlement fully satisfies the criteria for preliminary (and final) approval, Lead Plaintiffs respectfully request that the Court enter the Preliminary Approval Order.

## II.    BACKGROUND ON THE LITIGATION

On December 12, 2006, Citigroup Mortgage Loan Trust Inc. ("Citigroup Mortgage") filed a Registration Statement with the U.S. Securities and Exchange Commission ("SEC") for the issuance of billions of dollars of mortgage or asset-backed pass-through certificates. Citigroup Mortgage, a subsidiary of Citigroup Global Markets Inc., was set up to acquire mortgage loans from mortgage originators, such as Wells Fargo, Inc. and to then transfer the mortgages it acquired to a series of New York common law trusts created for the purpose of issuing the Certificates. The Certificates were then sold to investors pursuant to the Registration Statement and 18 Prospectus Supplements (collectively, the "Offering Documents"). Among other things, the Offering Documents emphasized the quality of the underwriting standards purportedly used to originate the underlying mortgage loans purchased by Citigroup Mortgage.

Lead Plaintiff Ann Arbor ERS originally filed this action in Nassau County Supreme Court on March 19, 2008. The action asserted claims under the Securities Act of 1933 (the "1933 Act") against various defendants, alleging that the Offering Documents used in issuing various mortgage-backed securities ("MBS") contained material false statements and omissions, and that Lead Plaintiff, and a class of other purchasers, suffered losses upon disclosure of the truth. Defendants removed the action to this Court on April 7, 2008. After the Court denied a motion to remand, the Court appointed Ann Arbor ERS and Kansas City Laborers as Lead Plaintiffs in March 2009. Dkt. Nos. 53-54.

Lead Plaintiffs filed an Amended Complaint for Violation of §§11, 12 and 15 of the 1933 Act, 15 U.S.C. §§77k, 77l and 77o, on April 6, 2009. Dkt. No. 55. This complaint asserted claims

- 3 -

related to all 18 offerings issued pursuant to the Offering Documents, and alleged that the Defendants made material misstatements and omissions in the Offering Documents regarding the underwriting and appraisal practices employed by the originators of the loans underlying the Certificates.    It further alleged that (i) the loan-to-value ("LTV") ratios of the loans were understated; and (ii) the credit ratings assigned to the Certificates were false, and overstated the true quality of the loans.  As a result of subsequent loan defaults, the value of the Certificates collapsed.

Defendants filed various challenges to the pleadings and the Court issued two opinions on standing and the adequacy of the pleadings.  Dkt. Nos. 85 and 110.  The Court ultimately upheld certain of the allegations in Lead Plaintiffs' Second Amended Complaint for Violation of §§11, 12 and 15 of the Securities Act of 1933 ("Complaint").  Dkt. No. 87.  The Court specifically allowed allegations relating to the two trusts in which the Lead Plaintiffs purchased Certificates:  CMLTI 2007-WFHE2 and CMLTI 2007-AR5.  Defendants answered the Complaint on February 9, 2011.  Dkt. No. 116.  The Complaint seeks recovery on behalf of all persons who purchased or otherwise acquired CMLTI 2007-WFHE2 and CMLTI 2007-AR5 Certificates between January 1, 2007 and October 31, 2007, inclusive (the "Relevant Time Period").  After denial of a motion by Defendants seeking to stay the action, the Court set discovery and other deadlines.

Lead Plaintiffs then moved for class certification, and the parties commenced class and substantive discovery. By September 2011, the parties had completed class certification discovery and briefing, and Lead Plaintiffs had obtained millions of pages in electronic and hard-copy documents. By October 2011, Lead Plaintiffs had begun taking depositions of current and former employees of Defendants and non-parties, and the Court had set discovery to close by the end of January 2012.

- 4 -

Prior to the agreement to settle, Lead Plaintiffs, through Lead Counsel, had thoroughly investigated and considered the relevant facts relating to the Litigation. This investigation included, among other things, a review and analysis of: (i) millions of pages of documents; (ii) relevant publicly available information; (iii) documentation for loans backing the trusts, including information from the borrowers; (iv) regulatory filings made by the Defendants with the SEC; and (v) governmental agency reports. Lead Plaintiffs also consulted with several MBS experts to analyze this information.

On October 12, 2011, the Settling Parties participated in a full-day settlement mediation before retired United States District Judge Layn R. Phillips. In connection with the mediation, the Lead Plaintiffs exchanged extensive mediation statements and replies with Defendants, and engaged in arm's-length negotiations with respect to a potential settlement of the Litigation. The Settling Parties were unable to agree on settlement terms at the conclusion of the mediation. However, negotiations continued, with Judge Phillips ultimately submitting a mediator's recommendation that the case be settled for $24,975,000 in cash, which was accepted by the Settling Parties.

Following the agreement-in-principle to settle, the Settling Parties negotiated the Stipulation. Given the motion practice and discovery conducted prior to the execution of the Stipulation, Lead Plaintiffs and Lead Counsel had obtained a thorough understanding of the strengths and weaknesses of the claims and the potential defenses. In light of: (i) the Settlement's substantial cash benefit; (ii) the expense and risks of continuing to litigate through summary judgment, trial, and appeals; (iii) the arm's-length negotiations that occurred between the Settling Parties, with the assistance of an experienced mediator; and (iv) the approval of the Settlement by the Court-appointed Lead Plaintiffs, it is respectfully submitted that the Settlement warrants the Court's preliminary approval.

705822_1

## III.   ARGUMENT

### A.   The Proposed Settlement Warrants Preliminary Approval

Rule 23(e) requires judicial approval for any compromise of claims brought on a class basis. Approval of a proposed settlement is committed to the court's discretion, while recognizing that public policy strongly favors pretrial settlement of complex class action lawsuits. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96,116-17 (2d Cir. 2005) ("We are mindful of the 'strong judicial policy in favor of settlements, particularly in the class action context.'") (citation omitted); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) ("It is well established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions.").

The Court "must determine whether the terms of the proposed settlement warrant preliminary approval . . . [by] mak[ing] 'a preliminary evaluation' as to whether the settlement is fair, reasonable and adequate." *In re Currency Conversion Fee Antitrust Litig.*, No. MDL 1409, 2006 WL 3247396, at \*5 (S.D.N.Y. Nov. 8, 2006); *see also Wal-Mart Stores*, 396 F.3d at 116; *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997); *see also Torres v. Gristede's Operating Corp.*, No. 04-CV-3316 (PAC), 2010 WL 2572937, at \*2 (S.D.N.Y. June 1, 2010) ("[p]reliminary approval of a settlement agreement requires only an 'initial evaluation' of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties" and "[t]o grant preliminary approval, the court need only find that there is '"probable cause" to submit the [settlement] to class members and hold a full-scale hearing as to its fairness.'") (citation omitted).

"Review of a proposed class action settlement generally involves a two-step process: preliminary approval and a 'fairness hearing.' First, the court reviews the proposed terms of

- 6 -

settlement and makes a preliminary determination on the fairness, reasonableness and adequacy of the settlement terms." *In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 191 (S.D.N.Y. 2005). During this first step, a court considers whether the settlement warrants preliminary approval, such that notice of the settlement should be sent to the class and a fairness hearing held.  In the second step, after notice of the proposed settlement has been provided to the class and a hearing has been held to consider the fairness and adequacy of the proposed settlement, the court considers whether the settlement warrants "final approval." *Id.*[3]  As explained by Judge Sweet:

> In considering preliminary approval, courts make a preliminary evaluation of the fairness of the settlement, prior to notice.  Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted.  Once preliminary approval is bestowed, the second step of the process ensues. . . .

*NASDAQ*, 176 F.R.D. at 102; *see also In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007).

In essence, the Court should determine whether the settlement is "'at least sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard.'" *In re NASDAQ*, 176 F.R.D. at 102 (citation omitted); *Prudential*, 163 F.R.D. at 209 ("The Court's

---

[3]     A final approval determination is based on an analysis of nine factors established in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).  The *Grinnell* factors are: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of the attendant risks of litigation. *Id.*

- 7 -

function now is 'to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing.'") (citation omitted).

### 1. The Proposed Settlement Is the Result of Well Informed, Good Faith, Arm's-Length Negotiations

A presumption of fairness applies to a proposed class settlement when the settlement is the product of arm's-length negotiations conducted by experienced counsel knowledgeable in complex class litigation. *Wal-Mart Stores*, 396 F.3d at 116; *see also Leung v. Home Boy Rest. Inc.*, No. 07 Civ. 8779 (RJS) (DFE), 2009 WL 398861, at *1 (S.D.N.Y. Feb. 18, 2009) (preliminary approval appropriate where "the proposed settlement appears to be the product of extensive, arms-length negotiations conducted by experienced counsel with input from the parties"). Here, the Settlement is the product of such negotiations. The Settling Parties took part in a full-day mediation before retired Judge Phillips, a mediator with extensive experience who has mediated numerous other complex class action mediations, including other MBS actions. *See, e.g., Mass. Bricklayers and Masons Trust Funds v. Deutsche Alt-A Sec., Inc., et al.*, No. 2:08-cv-03178-LDW-ARL (E.D.N.Y. July 11, 2012); *In re Wells Fargo Mortg.-Backed Certificates Litig.*, No. 09-CV-1376-LHK (PSG) (N.D. Cal. Nov. 14, 2011). *See also, In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 498 (E.D. Mich. 2008) (speaking of Judge Phillips, "the Court and the parties have had the added benefit of the insight and considerable talents of a former federal judge who is one of the most prominent and highly skilled mediators of complex actions, who acted as Special Master in the settlement negotiations").

Lead Counsel's investigation into the facts and the merits of the claims and defenses further supports a finding that the process leading to the Settlement was thorough and well-informed. Lead Counsel did an extensive review of publicly available information concerning the Defendants and the claims asserted, including newspaper articles, online publications, documentation for loans

- 8 -

backing the trusts, SEC filings and governmental agency reports, including those from the Financial Crisis Inquiry Committee ("FCIC"). In addition, Lead Counsel thoroughly researched Lead Plaintiffs' legal claims, filed two consolidated complaints, opposed two rounds of motions to dismiss, moved for class certification, undertook significant formal fact and class discovery, which included the analysis of millions of pages of documents and several depositions, and consulted with MBS experts. Lead Counsel and Lead Plaintiffs had a well-developed understanding of the strengths and weaknesses of their case before entering into negotiations and agreeing to the proposed Settlement.

### 2. The Proposed Settlement Falls Within the Range of Reasonableness and Merits Issuance of Notice and a Hearing on Final Approval

The proposed $24,975,000 Settlement is well within the range of reasonableness. Based on the total initial face dollar value of the Certificates as stated in the Offering Documents (without subtracting the principal pay-downs received on the Certificates), and assuming claims are submitted for 100% of the eligible Certificates, the estimated average recovery is $13.25 per $1,000 in initial face value of the Certificates. When compared to the estimated recoveries in similar recent MBS litigation, this is an excellent recovery for the Settlement Class. For example, the court in *In re Wells Fargo Mortg.-Backed Certificates Litig.*, No. 09-CV-1376-LHK (PSG) (N.D. Cal. Nov. 14, 2011), gave final approval of a settlement in a similar mortgage-backed securities action where plaintiffs estimated recovery was $2.70 per $1,000 in initial certificate value. Likewise, Judge Rakoff preliminarily approved a settlement in a mortgage-backed securities case like this one where plaintiffs' estimated recovery was $19.05 per $1,000 in initial certificate value. *Pub. Emps. Ret. Sys. of Miss., et al. v. Merrill Lynch & Co. Inc., et al.*, No. 08-cv-10841-JSR-JLC (S.D.N.Y. Dec. 15, 2011).

- 9 -

Although Lead Plaintiffs and Lead Counsel believe that the claims asserted in the Litigation are meritorious and that they could ultimately prevail at trial, continued litigation against Defendants posed significant risks that made any recovery for the Settlement Class uncertain. The fairness and adequacy of the Settlement is underscored by considering the obstacles the Settlement Class would face in ultimately succeeding on the merits, as well as the expense and likely duration of the Litigation. *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 WL 4526593, at *10 (S.D.N.Y. Dec. 20, 2007).

Lead Counsel and Lead Plaintiffs appreciated the unique and significant risks present in this Litigation. For example, at the commencement of the case there was little established precedent for MBS litigation, and no court had sustained class claims under the federal securities laws for purchasers of MBS. In addition, no court at that time had certified a MBS class or accepted plaintiffs' damages theories arising from such claims. After this action was filed, the limited relevant decisions confirmed the risks of the Litigation, as courts dismissed class MBS claims and denied class certification motions. *See, e.g., Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 658 F. Supp. 2d 299 (D. Mass. 2009) (dismissing claims), *aff'd in part and vacated in part*, 632 F.3d 762 (1st Cir. 2011); *N.J. Carpenters Health Fund v. Residential Capital, LLC*, 272 F.R.D. 160 (S.D.N.Y. 2011) (denying class certification), *aff'd sub nom. N.J. Carpenters Health Fund v. Rali Series 2006-Q01*, No. 11-1683-CV, 2012 U.S. App. LEXIS 8675 (2d Cir. Apr. 30, 2012).[4]

---

[4]     More recently, two courts within this Circuit have certified classes in MBS cases at the trust level. *See Pub. Emps. Ret. Sys. of Miss. v. Merrill Lynch & Co.*, 277 F.R.D. 97 (S.D.N.Y. 2011); *N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*, No. 08 Civ. 5653 (PAC), 2011 U.S. Dist. LEXIS 92597 (S.D.N.Y. Aug. 16, 2011).

If the Litigation had continued, Lead Plaintiffs faced substantial challenges both in obtaining class certification and in establishing that Defendants made untrue statements and omissions in the Offering Documents in violation of the 1933 Act. Assuming that Lead Plaintiffs prevailed on the class certification and liability issues, Defendants would still have the opportunity to persuade the Court, or the jury, that the statutory damages pursuant to §11 should be reduced or eliminated because a portion, or all, of the losses were attributable to causes other than the alleged misstatements or omissions. *See* 15 U.S.C. §77l(b) (defendants may assert affirmative defense of loss causation). Defendants would attempt to prove that that the overall national economic downturn, housing price declines and reduced liquidity, not the alleged untrue statements and omissions, were to blame for any decline in the Certificates' value. There is no doubt that both sides would present complex and nuanced information to a jury that would include a "battle of the experts" on the arcana of loss causation theories, damages calculations and securities disclosure requirements.

When considering the Settlement, Lead Counsel weighed the certainty of a substantial cash recovery for the Settlement Class against these significant legal challenges. Under these circumstances, it is submitted that the proposed Settlement is fair, reasonable and adequate, and deserves preliminary approval.

### 3.     The Settlement Has No Obvious Deficiencies

There are no "'grounds to doubt [the settlement's] fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys.'" *Prudential*, 163 F.R.D. at 209 (citation omitted). Lead Plaintiffs, like all other Settlement Class Members, will receive their pro rata distribution from the Net Settlement Fund in accordance with a Plan of Allocation developed with the assistance of a

- 11 -

damage consultant and that will be presented to the Court for approval. In addition, the award of attorneys' fees and expenses is wholly separate from the Settlement and also subject to the Court's approval.

Accordingly, nothing in the course of this Litigation, the settlement negotiations, or the Settlement itself raises fairness concerns. Lead Plaintiffs therefore request that the Court preliminarily approve the Settlement and set a date for consideration of final approval of the Settlement.

## IV. CERTIFICATION OF THE SETTLEMENT CLASS FOR SETTLEMENT PURPOSES IS APPROPRIATE

Lead Plaintiffs also request that the Court certify the Settlement Class for purposes of the Settlement under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure. The proposed Settlement Class consists of

> all persons or entities who purchased or otherwise acquired the Certificates[5] during the Relevant Time Period and who were damaged thereby. Excluded from the Class are Defendants, their Related Parties, Wells Fargo, Allstate Insurance Company, Allstate Life Insurance Company, Allstate Life Insurance Company of New York, Allstate Retirement Plan, and Agents Pension Plan, and their respective officers, affiliates and directors at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which any Defendant, Related Party, Wells Fargo, Allstate Insurance Company, Allstate Life Insurance Company, Allstate Life Insurance Company of New York, Allstate Retirement Plan, or Agents Pension Plan has or had a controlling interest, except that Investment Vehicles shall not be excluded from the Class. Also excluded from the Class are any persons or entities who exclude themselves by filing a valid request for exclusion in accordance with the requirements set forth in the Notice.

---

[5]    The "Certificates" are the Citigroup Mortgage Loan Trust 2007-AR5 Mortgage Pass-Through Certificates and the Citigroup Mortgage Loan Trust 2007-WFHE2 Asset-Backed Pass-Through Certificates.

705822_1

Stipulation, ¶1(nn).[6]

The Second Circuit has long acknowledged the propriety of certifying a class solely for purposes of a class action settlement. *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982); *In re Marsh & McLennan Cos. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 WL 5178546, at *8 (S.D.N.Y. Dec. 23, 2009). Indeed, certification of a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *Prudential*, 163 F.R.D. at 205. "'[S]ettlement classes are favored when there is little or no likelihood of abuse, and the settlement is fair and reasonable and under the scrutiny of the trial judge.'" *Id.* (quoting *In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 174 (5th Cir. 1979)).

A settlement class, like other certified classes, must satisfy the requirements of Rule 23(a) and (b). *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006). Nevertheless, the manageability concerns of Rule 23(b)(3) are not at issue in a settlement class. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 593 (1997) ("Whether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested."). *See also, In re American Int'l Grp., Inc. Sec. Litig.*, No. 10-4401-cv, 2012 WL 3264048 (2d Cir. Aug. 13, 2012). As explained *infra*, certification is appropriate here because the proposed Settlement Class meets the requirements of Rule 23(a) and (b)(3).

---

[6] This definition is materially the same as the definition of the Settlement Class in Lead Plaintiffs' Memorandum of Law in Support of Motion for Class Certification (Dkt. No. 150) ("Class Certification Brief") at 1, filed on September 16, 2011.

- 13 -

A.    The Settlement Class Satisfies the Requirements of Rule 23(a)

Certification is appropriate under Rule 23(a) if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).

1.    The Settlement Class Members Are Too Numerous to Be Joined

Certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be "impracticable." Fed. R. Civ. P. 23(a)(1).  "Impracticable does not mean impossible" (*Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993)), but "only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 244-45 (2d Cir. 2007).  Numerosity is presumed when a class consists of 40 members or more. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

Here, based on a very conservative method of identifying Settlement Class Members from information reviewed in discovery, there are at least 240 unique persons or entities who invested in the Certificates during the Relevant Time Period.  Lead Plaintiffs' expert estimates that the CMLTI 2007-AR5 offering had at least 170 unique investors and the CMLTI 2007-WFHE2 offering had at least 70 investors.  Expert Report of Joseph R. Mason, ¶92 (Dkt. No. 147-1, Ex. A).  Thus, the Settlement Class is sufficiently numerous that joinder of all members would be impracticable and, accordingly, satisfies Rule 23(a)(1). *See Consol. Rail*, 47 F.3d at 483.

Moreover, certification will promote judicial economy and uniformity of decision by concentrating these claims into a single class action. *See Robidoux*, 987 F.2d at 936 ("Consolidating

- 14 -

in a class action what could be over 100 individual suits serves judicial economy."). Additionally, the Members of the Settlement Class are geographically dispersed, not only throughout the country, but also overseas. *Id.* Accordingly, Rule 23(a)'s numerosity requirement is satisfied.

### 2. There Are Common Questions of Law and Fact

Rule 23(a)(2) requires the existence of at least one question of law or fact common to the class. *See Cent. States*, 504 F.3d at 245; *Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001). Federal securities cases easily meet the commonality requirement, which is satisfied where "putative class members have been injured by similar material misrepresentations and omissions." *Initial Pub. Offering*, 243 F.R.D. at 85; *see In re Globalstar Sec. Litig.*, No. 01 Civ. 1745 (PKC), 2004 WL 2754674, at *4 (S.D.N.Y. Dec. 1, 2004) ("Common questions of law and fact in this action include whether certain statements were false and misleading, whether those statements violated the federal securities laws, whether those statements were knowingly and recklessly issued, and ensuing causation issues."); *In re Oxford Health Plans, Inc., Sec. Litig.*, 191 F.R.D. 369, 374 (S.D.N.Y. 2000) ("Where the facts as alleged show that Defendants' course of conduct concealed material information from an entire putative class, the commonality requirement is met.").

Here, the claims of Lead Plaintiffs and the Settlement Class arise out of the same statements in the Offering Documents which were used to sell the Certificates to the Lead Plaintiffs and the Settlement Class. Moreover, the different tranches of Certificates in each offering are interrelated and issued pursuant to common prospectus supplements. Thus, any untrue statement or omission in the Offering Documents would similarly affect investors in all the Certificates issued pursuant to those Offering Documents. *See generally* Class Certification Brief at 13 (Dkt. No. 150). Because

- 15 -

these questions of law and fact are common to all members of the Settlement Class, the commonality requirement of Rule 23(a)(2) is met.

### 3. The Class Representatives' Claims Are Typical of Those of the Settlement Class

Rule 23(a)(3) requires that the claims of the class representatives be "typical" of the claims of the class. Fed. R. Civ. P. 23(a)(3). Typicality is established where "'the claims of the named plaintiffs arise from the same practice or course of conduct that gives rise to the claims of the proposed class members.'" *In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 85 (S.D.N.Y. 2007) (citation omitted); *see also Oxford Health Plans*, 191 F.R.D. at 375. "Typical" does not mean "identical." *See Marsh & McLennan*, 2009 WL 5178546, at *10. The focus of the typicality inquiry is not the plaintiffs' behavior, but rather the defendants' actions. *See Teachers' Ret. Sys. of La. v. ACLN Ltd.*, No. 01 Civ. 11814(LAP), 2004 WL 2997957, at *4 (S.D.N.Y. Dec. 27, 2004). The critical question is whether the proposed class representatives and the class can point to the same "common course of conduct" by defendants to support a claim for relief. Accordingly, "[f]actual differences involving the date of acquisition, type of securities purchased and manner by which the investor acquired the securities will not destroy typicality if each class member was the victim of the same material misstatements and the same fraudulent course of conduct." *Marsh & McLennan*, 2009 WL 5178546, at *10; *see also Robidoux*, 987 F.2d at 936-37 ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims.").

Here, Lead Plaintiffs and each Settlement Class Member purchased Certificates pursuant to the Offering Documents, which contained the same alleged misrepresentations and omissions. *In re Dynex Capital, Inc. Sec. Litig.*, No. 05 CIV. 1897 (HB), 2011 WL 781215, at *8 (S.D.N.Y. Mar. 7,

- 16 -

2011) (finding claims to be typical because legal theories and proof would be the same for plaintiffs' claims alleging violations of underwriting and origination guidelines in the offerings). Thus, Lead Plaintiffs' and the Settlement Class Members' claims arise from the same course of conduct and will focus on the same misrepresentations and omissions, and assert the same legal theories, in proving the same Defendants' liability. *See Katz v. Image Innovations Holdings, Inc.*, No. 06 Civ. 3707(JGK), 2010 WL 2926196, at *4 (S.D.N.Y. July 22, 2010). Moreover, the alleged untrue statements and/or material omissions in the offering Documents adversely affected all Certificates in each tranche of all the Offerings at issue. Class Certification Brief at 13 (Dkt. No. 150). As such, Lead Plaintiffs satisfy the typicality requirement. *See In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132, 134-35 (S.D.N.Y. 2008).

### 4. The Class Representatives Will Fairly and Adequately Protect the Interests of the Settlement Class

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy of representation is measured by two standards: whether (1) the claims of the Lead Plaintiffs conflict with those of the class; and (2) Lead Plaintiffs' counsel are qualified, experienced and able to conduct the litigation. *See In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992); *Marsh & McLennan*, 2009 WL 5178546, at *10; *Oxford Health Plans*, 191 F.R.D. at 376.

Lead Plaintiffs and the Settlement Class share the common objective of maximizing their recovery, and no conflict exists between Lead Plaintiffs and Settlement Class Members. *See Drexel*, 960 F.2d at 291; *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members."). Lead Plaintiffs' interests are directly aligned with the interests of the Settlement Class who collectively purchased Certificates pursuant to

- 17 -

the same allegedly material untrue statements and omissions in the Offering Documents. *See Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071(HB), 2003 WL 21672085, at *3 (S.D.N.Y. July 16, 2003) (finding proposed class representative adequate where the complaint alleged "a common course of conduct and a unitary legal theory for the entire class period – that is, Defendants issued prospectuses and registration statements that contained false statements about the Trust's NAV, because the loans were not properly valued"); *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 282 (S.D.N.Y. 2003) (explaining that "named plaintiffs' interests are directly aligned with those of the absent class members: they are purchasers of WorldCom equity and debt securities who suffered significant losses as a result of the investments").

Lead Plaintiffs have also demonstrated their commitment to monitor and supervise the prosecution of this action on behalf of the Settlement Class. Lead Plaintiffs retained experienced counsel, receive regular status updates, participate in strategic decisions, and have actively participated in discovery. Indeed, each of the Lead Plaintiffs prepared for and sat for a deposition (as did their investment advisors) and also participated in the mediation process. Lead Plaintiffs are precisely the type of engaged institutional investors Congress sought to empower when passing the Private Securities Litigation Reform Act of 1995 ("PSLRA").

Moreover, Lead Counsel is qualified and capable of prosecuting this action. Robbins Geller Rudman & Dowd LLP has a proven track record of success in complex securities class actions such as this. *See* Egler Decl., Ex. 2. Therefore, Rule 23(a)(4) is satisfied.

**B.    The Class Representatives' Claims Satisfy the Prerequisites of Rule 23(b)(3)**

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the

- 18 -

controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) is "designed to secure judgments binding all class members save those who affirmatively elected to be excluded," where a class action will "'achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Amchem*, 521 U.S. at 614, 615 (citation omitted). The proposed Settlement Class meets these requirements under Rule 23(b)(3).

### 1. Common Legal and Factual Questions Predominate

"'Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" *Marsh & McLennan*, 2009 WL 5178546, at *11 (quoting *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002)). Common issues will predominate where each class member is alleged to have suffered the same kind of harm pursuant to the same legal theory arising out of the same alleged course of conduct, and the only individualized questions concern the amount of damages. *See Marsh & McLennan*, 2009 WL 5178546, at *11; *Initial Pub. Offering*, 243 F.R.D. at 92; *In re Blech Sec. Litig.*, 187 F.R.D. 97, 107 (S.D.N.Y. 1999) ("In determining whether common questions of fact predominate, a court's inquiry is directed primarily toward whether the issue of liability is common to members of the class."). As the Supreme Court has noted, predominance is a test "readily met" in cases alleging securities fraud. *Amchem*, 521 U.S. at 625.

Here, the same alleged course of conduct by the Defendants forms the basis of all Settlement Class Members' claims. There are numerous common issues relating to the Defendants' liability which predominate over any individualized issues. *See generally* Class Certification Brief at 16-20 (Dkt. No. 150). The predominance requirement of Rule 23(b)(3) is, therefore, satisfied.

- 19 -

### 2.    A Class Action Is Superior to Other Methods of Adjudication

Rule 23(b)(3) sets forth the following non-exhaustive factors to be considered in making a determination of whether class certification is the superior method of litigation: "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *See* Fed. R. Civ. P. 23(b)(3).

Considering these factors, this class action is clearly "superior to other available methods for fairly and efficiently adjudicating" the federal securities law claims of the persons who invested in the Certificates during the Relevant Time Period. Fed. R. Civ. P. 23(b)(3). Indeed, courts have concluded that the class action device in securities cases is usually the superior method of redressing injuries to a large number of individual plaintiffs:

> In general, securities suits such as this easily satisfy the superiority requirement of Rule 23. Most violations of the federal securities laws, such as those alleged in the Complaint, inflict economic injury on large numbers of geographically dispersed persons such that the cost of pursing individual litigation to seek recovery is often not feasible. Multiple lawsuits would be costly and inefficient, and the exclusion of class members who cannot afford separate representation would neither be "fair" nor an adjudication of their claims. Moreover, although a large number of individuals may have been injured, no one person may have been damaged to a degree which would induce him to institute litigation solely on his own behalf.

*Blech*, 187 F.R.D. at 107. *See also Marsh & McLennan*, 2009 WL 5178546, at *12 (recognizing that the "class action is uniquely suited to resolving securities claims," because "the prohibitive cost of instituting individual actions" in such cases gives class members "limited interest in individually controlling the prosecution or defense of separate actions"); *Monster Worldwide*, 251 F.R.D. at 139 ("as a general rule, securities fraud cases 'easily satisfy the superiority requirement [as] [m]ost violations of the federal securities laws . . . inflict economic injury on large numbers of

- 20 -

geographically dispersed persons such that the cost of pursing individual litigation to seek recovery is often not feasible'") (citation omitted).

Here, the scope and complexity of Lead Plaintiffs' claims against the Defendants, together with the high cost of individualized litigation, make it unlikely that, absent class certification, Settlement Class Members would be able to obtain relief. Finally, any potential difficulties of managing the class action at trial need not be considered here. As the Supreme Court explained in *Amchem*, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." 521 U.S. at 620. Accordingly, the requirements of Rule 23(b)(3) are satisfied.

## V.    NOTICE TO THE SETTLEMENT CLASS SHOULD BE APPROVED

Federal Rule of Civil Procedure 23(e)(1) requires that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal" (*i.e.*, the proposed settlement). Here, the Settling Parties negotiated the form of the Notice to be disseminated to all potential Settlement Class Members whose names and addresses can be identified with reasonable effort from or through Defendants' records. In addition, the Claims Administrator[7] will send the Notice to nominees which hold securities in "street name" for the benefit of their customers who are the beneficial purchasers of the securities. The Settling Parties will supplement the mailed Notice with a Summary Notice published in *Investor's Business Daily* and transmitted over *Business Wire*. The Notice and Summary Notice are attached to the Stipulation as Exhibits A-1 and A-3. Further,

---

[7]     The proposed Claims Administrator is Gilardi & Co. LLC, which has almost 25 years of experience in class action administration and has handled some of the largest securities settlements in history, including the Enron shareholder settlements. *See generally* http://www.gilardi.com.

the Stipulation, its Exhibits, the Notice and the Claim Form will be posted on the Claims Administrator's website.

In addition, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." Fed. R. Civ. P. 23(h)(1). Here, the Notice notifies Settlement Class Members that Lead Counsel will apply to the Court for attorneys' fees of no more than 20.5% of the Settlement Fund and expenses of no more than $850,000, plus interest on those amounts. *See* Stipulation, Ex. A-1. The Notice also states that as part of this request, Lead Plaintiffs may seek reimbursement for their time and expenses (including lost wages) incurred representing the Settlement Class in accordance with 15 U.S.C. §77z-1(a)(4).

Furthermore, the PSLRA requires the notice of settlement to include: (1) "[t]he amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per share basis;" (2) "[i]f the parties do not agree on the average amount of damages per share that would be recoverable if the plaintiff prevailed on each claim alleged under this subchapter, a statement from each settling party concerning the issue or issues on which the parties disagree;" (3) "a statement indicating which parties or counsel intend to make . . . an application [for attorneys' fees or expenses], the amount of fees and costs that will be sought (including the amount of such fees and costs determined on an average per share basis), and a brief explanation supporting the fees and costs sought;" (4) "[t]he name, telephone number, and address of one or more representatives of counsel for the plaintiff class who will be reasonably available to answer questions from class members;" and (5) "[a] brief statement explaining the reasons why the parties are proposing the settlement." 15 U.S.C. §77z-1(a)(7)(A)-(E).

705822_1

The proposed Notice satisfies 15 U.S.C. §77z-1(a)(7).  It sets forth the aggregate amount of the Settlement Fund ($24,975,000) and the estimated average recovery if claims are submitted for 100% of the eligible Certificates ($13.25 per $1,000 in initial certificate value); states the Settling Parties' disagreement over liability and damages; sets out the amount of attorneys' fees and expenses that Lead Counsel and Lead Plaintiffs will seek (an average of $3.16 per $1,000 in initial certificate value); and describes the Plan of Allocation.  The Notice also summarizes the nature, history, and status of the Litigation; sets forth the definition of the Settlement Class; states the Settlement Class's claims and issues; discusses the rights of persons who fall within the definition of the Settlement Class; summarizes the reasons the Settling Parties are proposing the Settlement; and describes how members of the Settlement Class can make a claim, object to the Settlement, or exclude themselves from the Settlement Class.

The Notice and the Proof of Claim form provide instructions on the process for completing and submitting the Proof of Claim.  The Notice also provides the name and mailing address for the Claims Administrator, Lead Counsel, and counsel for Defendants.  The Summary Notice also informs Settlement Class Members that copies of the Notice and Proof of Claim may be obtained by writing the Claims Administrator, or by accessing the documents on the Claims Administrator's website.  Finally, the Notice sets forth the date, time and place of the Final Approval Hearing, along with the procedures for being heard at the hearing, for objecting to the Settlement, or seeking exclusion from the Settlement Class.

Accordingly, the Notice and Summary Notice "'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Wal-Mart*, 396 F.3d at 114 (citation omitted).  The manner of providing notice, which includes individual notice by first class mail to all Settlement Class Members who can

- 23 -

be reasonably identified, represents the best notice practicable under the circumstances and satisfies the requirements of due process and Rule 23. *See In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515(WHP), 2008 WL 5110904, at *3 (S.D.N.Y. Nov. 20, 2008).

## VI.    PROPOSED SCHEDULE OF EVENTS

The Preliminary Approval Order provides for dates to be set for the Final Approval Hearing, mailing the Notice and publication of the Summary Notice, deadlines for filing of papers in support of the Settlement, Plan of Allocation, and application for fees and expenses, objecting to these matters and/or requesting exclusion from the Settlement Class.  If the Court acts on the Preliminary Approval Order on or prior to August 31, 2012, Lead Plaintiffs propose the following timetable leading to the Final Approval Hearing:

| EVENT | DATE |
|---|---|
| Notice mailed to Class | September 10, 2012 |
| Summary Notice Published | September 13, 2012 |
| Deadline for filing initial papers in support of the Settlement, Plan of Allocation, or request for an award of attorneys' fees and expenses | October 22, 2012 |
| Deadline for requesting exclusion from the Settlement Class or objecting to the Settlement, Plan of Allocation, or request for an award of attorneys' fees and expenses | November 5, 2012 |
| Reply papers in support of the Settlement, Plan of Allocation, or request for an award of attorneys' fees and expenses | November 19, 2012 |
| Final Approval Hearing | At the Court's convenience during the week of December 3, 2012 |
| Last day for submitting Proof of Claim and Release forms | January 10, 2012 |

## VII.   CONCLUSION

Based on the foregoing, Lead Plaintiffs respectfully request that the Court (i) preliminarily approve the proposed Settlement; (ii) certify the Settlement Class; (iii) approve the form and manner of notice; and (iv) schedule the Final Approval Hearing.  A proposed Preliminary Approval Order is submitted herewith.[8]

DATED:  August 27, 2012                      Respectfully submitted,

                                             ROBBINS GELLER RUDMAN
                                               & DOWD LLP
                                             SAMUEL H. RUDMAN
                                             DAVID A. ROSENFELD
                                             58 South Service Road, Suite 200
                                             Melville, NY  11747
                                             Telephone:  631/367-7100
                                             631/367-1173 (fax)

                                             ROBBINS GELLER RUDMAN
                                               & DOWD LLP
                                             ARTHUR C. LEAHY
                                             KEITH F. PARK
                                             THOMAS E. EGLER
                                             JONAH H. GOLDSTEIN
                                             SCOTT H. SAHAM
                                             SUSAN G. TAYLOR
                                             RYAN A. LLORENS
                                             NATHAN R. LINDELL
                                             IVY T. NGO
                                             L. DANA MARTINDALE



                                                     s/ Arthur C. Leahy
                                             _____
                                                   ARTHUR C. LEAHY

---

[8]      For the Court's convenience, two versions of the Preliminary Approval Order are submitted. One version has all of the suggested dates set forth above filled in (except for the date and time of the Final Approval Hearing) and the other version is submitted in blank.

- 25 -

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

Lead Counsel for Plaintiffs

VANOVERBEKE MICHAUD &
  TIMMONY, P.C.
MICHAEL J. VANOVERBEKE
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI 48201
Telephone: 313/578-1200
313/578-1201 (fax)

Additional Counsel for Plaintiffs

- 26 -